UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WARREN GREGORY,

     Plaintiff,

v.                                Case No. 8:16-cv-237-T-33AEP

CITY OF TARPON SPRINGS,
et al.,

     Defendants.

_____/

**ORDER**

This matter comes before the Court in consideration of Defendants City of Tarpon Springs and Officer Steve Gassen's Motion to Dismiss the Third Amended Complaint (Doc. # 55), filed on November 2, 2016. Plaintiff Warren Gregory filed a response in opposition on November 20, 2016. (Doc. # 58). For the reasons that follow, the Court grants the Motion to Dismiss with prejudice.

**I.   Background**

Warren Gregory resides in the City of Tarpon Springs, Florida, on a live-aboard boat with his wife, Michelle Gregory.[1] (Doc. # 51 at ¶¶ 5, 8). Until recently, Warren

_____

[1] Because Plaintiff and his wife share the same last name, the Court will refer to them by first name when necessary.

anchored his live-aboard boat "at a marina off property owned by a local businessman." (Id. at ¶ 30).

Due to Michelle's epilepsy, Warren and Michelle travel by bicycle rather than car. (Id. at ¶¶ 8a, 17). Warren, a self-described folk artist, learned how to decorate bicycles with flowers and other artistic items while living in the Netherlands. (Id. at ¶ 9). People have often asked to be photographed with Warren's decorated bicycles, and business owners have requested the bicycles be displayed in front of their shops. (Id. at ¶¶ 10-11).

However, the Tarpon Springs Police Department (TSPD) was less enthusiastic about Warren's decorated bicycles. The Complaint alleges Officer Gassen of the TSPD "followed [Warren] around and asked him to remove his bicycles . . . ." (Id. at ¶ 12). TSPD Officers also allegedly told Warren to leave "because the homeless are not allowed in Tarpon Springs." (Id. at ¶ 8).

Then, on December 14, 2013, Warren was arrested for aggravated assault by Officer Gassen. (Id. at ¶¶ 5, 51a). The Third Amended Complaint describes the events leading up to the December 14, 2013, arrest as follows: "[Warren] retreated to get a [.]22 caliber pistol and held it in his hand pointed at a thief after being pepper sprayed by the thief when he

discovered the thief had put stolen items in a shed where [Warren] was a tenant." (Id. at ¶ 5). A criminal complaint was filed against Warren on December 15, 2013; however, those criminal proceedings were ultimately terminated in favor of Warren on March 25, 2014. (Id. at ¶ 6).

Warren criticized TSPD for his supposedly false arrest. (Id. at ¶ 5). Warren also "criticize[d] the police for . . . interference with [his] bicycles" and "for . . . the shadowing of him by the police wherever he goes or parks his decorated bicycles." (Id. at ¶¶ 24, 34).

Warren was again arrested on December 19, 2015, this time on the charge of felon in possession of a firearm. (Id. at ¶¶ 13, 15). According to the Third Amended Complaint, which does not allege the reason for the police presence, Warren refused to consent to a search of his live-aboard boat by TSPD officers. (Id. at ¶ 14). It is further alleged that, upon Warren's refusal, the TSPD requested that Florida Fish and Wildlife Conservation Commission (FWC) officers search the live-aboard boat. (Id.). During the search, FWC officers found a rifle onboard. (Id. at ¶ 18). The rifle was confiscated by TSPD, but was returned later that night. (Id. at ¶¶ 19, 22).

Michelle and her mother returned to the live-aboard boat after an outing to find a "large number of [TSPD] vehicles and officers," as well as Warren in handcuffs seated in the backseat of a police cruiser. (Id. at ¶¶ 13, 15). Michelle attempted to speak with Warren, as the cruiser's window was rolled down; however, officers informed her that she could not speak with Warren because he was under arrest. (Id. at ¶ 16). Michelle was physically upset and, "denied the right to board her boat to get her medication by the police," suffered an epileptic seizure, which required emergency medical services. (Id. at ¶ 17).

The Third Amended Complaint also alleges the TSPD officers knew Warren was not a felon, but nevertheless arrested him on the charge of felon in possession of a firearm. (Id. at ¶¶ 19-20). "After an hour or so" of being handcuffed, the handcuffs were removed and Warren was allowed to leave the police cruiser. (Id. at ¶ 21).

Thereafter, Warren and Michelle, who are represented by counsel, filed their original Complaint on January 29, 2016, against the City, TSPD, and Officer Gassen. (Doc. # 1). Defendants then filed their first Motion for a More Definite Statement, arguing that the Complaint was a shotgun pleading. (Doc. # 19). The Court granted the Motion in an Order

4

explaining the Complaint's defects on May 23, 2016. (Doc. # 33).

Subsequently, as the sole plaintiff, Warren filed a First Amended Complaint on June 10, 2016. (Doc. # 36). The First Amended Complaint included the City and Officer Gassen as defendants, but removed TSPD. (Doc. # 36 at 1). Warren also added Officer Christopher Lemmon as a defendant without requesting leave to do so from the Court. (Id.). However, the deadline to add parties or amend pleadings, as set by the Case Management and Scheduling Order, passed on May 23, 2016. (Doc. # 18). Although Michelle and TSPD were no longer listed as parties, no notice of dismissal was filed for either.

The City and Officer Gassen filed a second Motion for a More Definite Statement on July 1, 2016. (Doc. # 40). Warren did not file a response. Subsequently, on July 20, 2016, the Court granted the Motion as unopposed, and permitted Warren to file a Second Amended Complaint. (Doc. # 42). In its Order, the Court advised Warren that the Second Amended Complaint should:

> state[] each count or claim with particularity regarding the legal theory and relief requested; 2. set[] forth each claim for relief in separate numbered counts; 3. identif[y] in which capacity Officer Gassen is being sued; 4. identif[y] which of the factual allegations are relevant to individual claims; and 5. utlize[] the proper

procedures for adding or removing individual parties in this action.

(Id.).

On July 28, 2016, Warren filed the Second Amended Complaint with the caption listing Warren as the sole plaintiff, and retaining the City, and Officers Gassen and Lemmon, in their official capacities, as defendants. (Doc. # 43). However, Warren still had not requested leave from the Court to add Officer Lemmon. Nor did he file a notice dismissing TSPD as a defendant, or Michelle as a plaintiff. On August 1, 2016, the City and Officer Gassen filed a Motion to Dismiss the Second Amended Complaint, or for a More Definite Statement. (Doc. # 44). The Court granted that Motion on October 5, 2016, and granted Warren leave to file a Third Amended Complaint. (Doc. # 48). In its Order, the Court reemphasized that the Third Amended Complaint should state each claim with particularity in separate counts, explicitly incorporate factual allegations for each count, and follow the proper procedures for adding or removing parties. (Id. at 9-11).

On October 14, 2016, Warren filed both a Motion to add Officer Lemmon as a defendant and the Third Amended Complaint, listing Officer Lemmon, the City, and Officer Gassen as

6

defendants, and Warren and Michelle as plaintiffs. (Doc. ##
50, 51). The thirty-nine page Third Amended Complaint brings
the following seven Counts:

| | | |
|---|---|---|
| Count I: | Violation of Plaintiff's First Amendment Right to Travel in and Around Tarpon Springs Under 42 U.S.C. § 1983 |
| Count II: | State Libel and Slander Claim |
| Count III: | False Arrest – December 14, 2013 for Aggravated Assault |
| Count IV: | False Arrest – December 19, 2015 |
| Count V: | False Imprisonment Suit by Warrant Gregory for False Imprisonment – December 19, 2015 Against Police Officers Steve Gassen and Officer Christopher Lemmon In Their Official Capacities and the City of Tarpon Springs |
| Count VI: | Warren Gregory Malicious Prosecution Action for 2013 Arrest |
| Count VII: | Complaint by Michelle Gregory for Retaliation by Defendant Steve Gassen Against a Federal Witness |

(Doc. # 51). The Third Amended Complaint adds Count VI, which
was not pled in the previous three complaints.

The City of Tarpon Springs and Officer Gassen then filed
their Motion to Dismiss on November 2, 2016, arguing that the
Third Amended Complaint should be dismissed with prejudice
for repeated failure to cure the previous complaints'
deficiencies. (Doc. # 55 at 3). Warren filed a response in
opposition on November 20, 2016. (Doc. # 58). The Motion is
ripe for review.

## II.  Legal Standard

On a motion to dismiss, this Court accepts as true all

7

the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting

8

<u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

Further, "[a]fter <u>Iqbal</u> it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard." <u>Randall v. Scott</u>, 610 F.3d 701, 710 (11th Cir. 2010).

**III. <u>Analysis</u>**

    **A.   <u>Shotgun Pleading and Repeated Failure<br>to Cure Deficiencies</u>**

"A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer." <u>Paylor v. Hartford Fire Ins. Co.</u>, 748 F.3d 1117, 1126-27 (11th Cir. 2014) (footnotes omitted).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts . . ."; (2) a complaint that is "replete

with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

Although deficient complaints should be dismissed, the Federal Rules of Civil Procedure advise that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Eleventh Circuit has cautioned that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)(internal quotations and citations omitted).

Nevertheless, the City and Officer Gassen urge the Court to dismiss the Third Amended Complaint with prejudice because Warren has failed to clarify his claims sufficiently after three amendments. (Doc. # 55 at 2). They are correct that this Court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant, 252 F.3d at 1163.

The Court agrees that Warren has been given ample opportunity to file a complaint that clearly states a cause of action to which the City and Officer Gassen could respond. Indeed, the Court warned Warren in its Order dismissing the Second Amended Complaint that the Third Amended Complaint would be his "final opportunity to address" the recurring issues with the previous complaints. (Doc. # 48 at 9). Nevertheless, the Third Amended Complaint — while an improvement — does not correct the deficiencies the Court pointed out to Warren in its previous Orders.

Under Count I, styled as "Violation of Plaintiff's First Amendment Right to Travel in and Around Tarpon Springs Under 42 U.S.C. § 1983," it is still unclear under what legal theory

11

Warren is proceeding. For example, the right to travel is established under the Fourteenth Amendment, rather than the First Amendment. See Saenz v. Roe, 526 U.S. 489, 500 (1999)(stating that the Fourteenth Amendment right to travel embraces "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State").

Additionally, the allegations within Count I indicate that Warren is attempting to bring a claim for violations of rights other than the right to travel. For example, Warren alleges that Officer Gassen violated Warren's "[F]irst [A]mendment artistic expression rights" and retaliated against Warren for the "exercise of his First Amendment grievance rights." (Doc. # 51 at ¶¶ 41, 45).

The Court has previously warned Warren that he must "state[] each count or claim with particularity regarding the legal theory and relief requested" and "set[] forth each claim for relief in separate numbered counts." (Doc. # 42). While Count I by its title explicitly refers to only one claim regarding Warren's right to travel, the body of Count I

12

remains "a hodgepodge of potential claims." (Doc. # 33 at 7); see also Warner v. City of Marathon, No. 14-10071-CIV-KING, 2015 WL 5194608, at *3 (S.D. Fla. Sept. 4, 2015)(dismissing third amended complaint with prejudice where "Plaintiffs improperly [pled] at least four distinct causes of action under 42 U.S.C. § 1983 in each count," including "an equal protection claim, a due process claim, a 'right to contract' claim, and a Fourth Amendment unreasonable search claim"). Thus, the City and Officer Gassen must speculate as to "the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323.

Because "a complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a shotgun pleading," Count I's vague references to various legal theories and possible claims warrant the Third Amended Complaint's dismissal. Lampkin-Asam v. Volusia Cty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008)(internal quotations omitted); see also Apothecary Dev. Corp. v. City of Marco Island, Fla., No. 2:10-cv-392-FtM-36DNF, 2011 WL 1071448, at *2 (M.D. Fla. Mar. 18, 2011)("It is impermissible to combine multiple claims with different claims with different legal standards into one count.").

13

In addition, the claims for false arrest, false imprisonment, and malicious prosecution do not state whether they are federal, state, or common law causes of action. Thus, the applicability of defenses like sovereign immunity — which may apply for state law claims — is unclear to the City and Officer Gassen, "mak[ing] it difficult, if not impossible, for the City to frame a responsive pleading." (Doc. # 55 at 9). As the case is on its fourth complaint and the Defendants are still unsure of the claims against them, the Court finds that allowing further amendment would prejudice the City and Officer Gassen. See Apothecary Dev. Corp., 2011 WL 1071448, at *2 (noting that shotgun pleadings combining multiple claims in one count are "harmful and costly to litigants").

The Third Amended Complaint adds Count VII by Michelle against Officer Gassen for retaliation against a federal witness. However, as the Court explained in the Order dismissing the Second Amended Complaint, the Court's Orders allowed Warren to amend both his original and amended complaints "to clarify existing claims; it did not permit adding new claims or parties." Kahama VI, LLC v. HJH, LLC, No. 8:11-cv-2029-T-30TBM, 2013 WL 6511731, at *3 (M.D. Fla. Dec. 12, 2013). Nevertheless, the Third Amended Complaint adds this new claim. See Butler v. Crosby, No. 3:04-cv-917-

14

J-32MMH, 2006 WL 1071988, at *8 (M.D. Fla. Feb. 8, 2006)("Whether a motion to amend adds a new legal issue is a factor courts consider when determining whether to permit an amendment.").

Count VII also fails to heed the Court's warning that the legal theory behind each claim must be stated with particularity — it is unclear under what law this claim is brought. Furthermore, additional discovery regarding this new claim will be required, even though the parties have been diligently engaged in discovery for months. See Dannebrog Rederi AS v. M/Y True Dream, 146 F. Supp. 2d 1307, 1315 (S.D. Fla. 2001)(recognizing that amendment would be prejudicial "if the opponent would be required to engage in significant new preparation at a late stage of the proceedings").

Based on Warren's failure to cure the deficiencies of the previous complaints and failure to heed the Court's warnings regarding the addition of new parties and claims, the Court finds that dismissal with prejudice is appropriate. See Marshall v. Aryan Unlimited Staffing Solution/Faneuil Inc./MacAndrews & Forbs Holding, 599 F. App'x 896, 899 (11th Cir. 2015)(affirming dismissal with prejudice of pro se plaintiff's sixth amended complaint because "it was a shotgun pleading that made it impossible to know which allegations of

fact were intended to support which claims for relief"). While courts should grant leave to amend liberally, Warren is represented by experienced counsel who has had the benefit of the Court's previous detailed orders in order to address the deficiencies in the pleadings.

Even if the Court did not conclude that the Third Amended Complaint is a shotgun pleading, dismissal would still be warranted for the independent reasons discussed below.

### B.   Section 1983 Claim

In Count I, Warren brings a § 1983 claim for violation of his right to travel against both the City and Officer Gassen, in his official capacity. Although Warren premises this claim on the First Amendment, the right to travel claim is properly brought pursuant to the Fourteenth Amendment. Regardless of the Count's labelling, this claim is due to be dismissed against both the City and Officer Gassen.

### a. Official Capacity Claim Against Officer Gassen

The claim against Officer Gassen in his official capacity is redundant and due to be dismissed. "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991)(quoting

<u>Ky. v. Graham</u>, 473 U.S. 159, 165 (1985))(internal quotation marks omitted). Such a suit against an officer is actually a suit against the city that the officer serves. <u>Id.</u>

Accordingly, even if the Third Amended Complaint were not a shotgun pleading, the § 1983 claim against Officer Gassen should still be dismissed with prejudice. <u>See Ross v. City of Tarpon Springs</u>, No. 8:11-cv-2671-T-30EAJ, 2012 WL 1382271, at *3 (M.D. Fla. Apr. 20, 2012)("The court, therefore, will dismiss the section 1983 first amendment retaliation claim against DiPasqua in his official capacity with prejudice."); <u>Cannon v. City of Sarasota</u>, No. 8:09-cv-739-T-33TBM, 2010 WL 962934, at *3 (M.D. Fla. Mar. 16, 2010)("The Court finds that Plaintiffs' claims against Chief Abbott in his official capacity are redundant as Plaintiffs have also sued the City. The claims against Chief Abbot in his official capacity are dismissed with prejudice.").

### b. **"First Amendment Right to Travel" Claim**

Furthermore, after untangling the various potential claims in Count I, the Court finds this count against the City should also be dismissed for failure to state a claim. Warren states that the City violated his "[F]irst [A]mendment legal right under the Federal Constitution to travel," but

the allegations of the Third Amended Complaint do not support
such a claim. (Doc. # 51 at ¶43).

> The Fourteenth Amendment right to travel embraces
>
> the right of a citizen of one State to enter and to
> leave another State, the right to be treated as a
> welcome visitor rather than an unfriendly alien
> when temporarily present in the second State, and,
> for those travelers who elect to become permanent
> residents, the right to be treated like other
> citizens of that State.

Saenz, 526 U.S. at 500. Warren's claim does not involve the
freedom to travel interstate. Rather, Warren, who states that
he has been a permanent resident in Tarpon Springs for years,
complains that the City's officers harass him and Michelle as
they travel throughout the City. (Doc. # 51 at ¶¶ 43-44).
However, the right to intrastate travel is not recognized
under the Fourteenth Amendment. See Wright v. City of Jackson,
506 F.2d 900, 901-02 (5th Cir. 1975)("Since we can find no
fundamental constitutional right to intrastate travel
infringed by this ordinance, the City was not required to
justify the ordinance under the compelling interest standard
which must be met upon interference with a right to travel
interstate. We, therefore, affirm the dismissal failure to
state a claim."). Therefore, Warren has failed to state a

claim against the City for violating his Fourteenth Amendment right to travel.[2]

And to the extent that a claim may lie under the Due Process Clause of the Fourteenth Amendment, under which citizens "have a constitutionally protected liberty interest to be . . . on . . . city lands of their choosing that are open to the public generally," Warren has not pled such a claim, nor could the City and Officer Gassen be expected to anticipatorily respond to such a claim in a responsive pleading. Catron v. City of St. Petersburg, 658 F.3d 1260, 1266 (11th Cir. 2011)(quotation omitted).

### c.   Other First Amendment Claims

Furthermore, Warren's allegations regarding his freedom of speech and artistic expression, included under his right to travel claim, fail to state a claim against the City. A

---

[2] To the extent that the Florida Constitution protects the right to intrastate travel, State v. J.P., 907 So. 2d 1101, 1113 (Fla. 2004)(acknowledging that "the United States Supreme Court has never definitively ruled that there is a fundamental right to intrastate travel and that the federal circuit courts are divided on the issue" but that, under the Florida Constitution, "the right to intrastate travel in Florida is clear"), such a state claim would not be brought under § 1983. Bailey v. Wheeler, No. 15-11627, 2016 WL 6947003, at *3 (11th Cir. Nov. 28, 2016)("To establish a claim under § 1983, a plaintiff must demonstrate that a person acting under color of state law deprived him of a federal right.")(citing Myers v. Bowman, 713 F.3d 1319, 1329 (11th Cir. 2013).

plaintiff seeking to impose liability on a governmental entity under § 1983 must identify a "municipal 'policy or custom' that caused the plaintiff's injury." <u>Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997). Warren does not allege the existence of an ordinance or official custom of the City to prevent artistic displays, like Warren's bicycle art, from being exhibited on sidewalks or private property. <u>See</u> <u>Williams v. Orlando Police Dep't</u>, No. 6:14-cv-1813-Orl-22TBS, 2015 WL 136088, at *3 (M.D. Fla. Jan. 9, 2015)(dismissing pro se plaintiff's second amended complaint with prejudice because "[n]one of Plaintiff's pleadings contain even a bare allegation that his injuries were caused by an unconstitutional policy or custom, much less describe such policy or custom").

Rather, Warren points to the apparent vendetta of one police officer, Officer Gassen, who "continually demand[ed] that [Warren] move his bicycles." (Doc. # 51 at ¶ 41). When Warren refused to comply with these orders, Officer Gassen "pushed one of the bikes into the Anclote River, smashed another and [threw] others into the middle of the street damaging them permanently." (<u>Id.</u> at ¶ 42a). However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of

the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Okla. City v. Tuttle, 471 U.S. 808, 824 (1985).

Additionally, "[a] policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision and the basis for it.'" Gattis v. Brice, 136 F.3d 724, 727 (11th Cir. 1998)(quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). While Warren alleges that Officer Gassen's "actions were sanctioned by the City Manager, Police Chief, Commissioners and Mayor by their doing nothing about [Warren's] and other appreciative citizens and artistic citizens oral and written letter complaints," such an allegation does not show that policymakers for the City knew of and ratified the motives for Officer Gassen's actions. (Id. at ¶ 45).

C.   **Slander and Libel Claim, Count II**

Even beyond the Third Amended Complaint's status as a shotgun pleading, the City and Officer Gassen argue that the state-law slander and libel claim against Officer Gassen, in his official capacity, should be dismissed because Warren has

failed to state a claim and Officer Gassen has absolute immunity.

To establish a claim for defamation, a plaintiff must prove "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4)that the falsity of the statement caused injury to the plaintiff." Bass v. Rivera, 826 So. 2d 534, 535 (Fla. 2d DCA 2002). Under Florida law, "[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." Stephens v. Geoghegan, 702 So. 2d 517, 522 (Fla. 2d DCA 1997). This "absolute privilege protects the statements of all public officials, regardless of the branch of government or the level of the official." Cassel v. India, 964 So. 2d 190, 194 (Fla. 4th DCA 2007). Accordingly, this absolute privilege extends to police officers, like Officer Gassen. See Id.

In determining whether a public employee can be liable for defamatory statements, the focus is on "whether the communication was within the scope of the officer's duties." City of Miami v. Wardlow, 403 So. 2d 414, 416 (Fla. 1981). "The scope of an officer's duties is to be liberally construed." Cassel, 964 So. 2d at 194 (Goetz v. Noble, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995)). "The term 'duties' is not confined to those things required of the officer, but

rather extends to all matters which he is authorized to perform." Id. (citing Stephens, 702 So. 2d at 523). Furthermore, "the fact that the substance of the statement was unsupported and turned out to be false" does not affect this privilege. Cassel, 964 So. 2d at 195. "The fact that [Officer Gassen's] statement may be viewed as having an unworthy or non-public purpose does not destroy the privilege." Id. (citing Barr v. Mateo, 360 U.S. 564, 575 (1959)).

In the Third Amended Complaint, Warren brings his slander and libel claim against Officer Gassen in his official capacity and states that, in the course of arresting Warren, Officer Gassen "loudly told the gathered crowd in a loud voice the slanderous statement that Warren Gregory was a Felon who should not have a gun." (Doc. # 51 at ¶¶ 15, 47a). Officer Gassen's "loud oral statements" were made "at the time of [Warren's] false imprisonment and/or arrest." (Id. at ¶ 47a); see also Cassell, 964 So. 2d at 194 (noting that the "complaint affirmatively alleged at all material times Cassell was acting within 'the course and scope of his employment' with the city, an allegation which India has not disavowed"). As the Third Amended Complaint itself acknowledges that Officer Gassen was acting in his official

capacity and made the defamatory statements during Warren's arrest, Warren has failed to state a claim for libel or slander that is not barred by an absolute privilege.

Warren also complains "of the publication on the worldwide internet and newspapers and false probable cause affidavits and publicly accessible police reports of false allegations" of his arrest. (Id. at ¶ 49). To the extent that Warren wishes to hold the City and Officer Gassen liable for the publication of publicly accessible police records or third party articles regarding Warren's arrests, the claim cannot stand. Warren was arrested, and reports to that effect are not false statements. See Meyer v. Franklin, No. 1:15-cv-185-MW-GRJ, 2016 WL 944421, at *13 (N.D. Fla. Feb. 25, 2016), report and recommendation adopted, No. 1:15CV185-MW/GRJ, 2016 WL 953851 (N.D. Fla. Mar. 11, 2016)(granting summary judgment to defendants on defamation claim because "the arrest report did not contain a false statement. The arrest report confirmed that [Plaintiff] was arrested and identified the charge for which [Plaintiff] was arrested."); Henning v. Day, No. 6:15-cv-927-Orl-40DAB, 2016 WL 1068482, at *9 (M.D. Fla. Mar. 18, 2016)("Count 14 alleges slander per se against the website that displayed Plaintiff's mugshot on the Internet. Again, however, the truth of the website's

publication bars recovery, as there can be no dispute that Plaintiff was truthfully arrested and charged with aggravated battery."). Furthermore, publication to the internet of public documents like arrest reports by third parties cannot be held against the City and Officer Gassen. See Meyer, 2016 WL 944421, at *13 ("[T]o the extent that a third party posted Plaintiff's mugshot on a public website, Officer Franklin cannot be liable for the actions of third parties.").

Therefore, as the allegedly defamatory statements were made in the course of Officer Gassen's duties and the City and Officer Gassen cannot be held liable for the truthful publication of the fact of Warren's arrest, Count II should be dismissed with prejudice.

**D.  False Arrest Claims and False Imprisonment Claim, Counts III, IV, and V**

**a. False Arrest**

The City and Officer Gassen argue that the false arrest claims against the City, as pled by Warren, are barred by sovereign immunity. Florida Statute Section 768.28 states:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).

Although they acknowledge that false arrest claims are not typically barred by immunity, the City and Officer Gassen note that Warren pleads these claims as though the arrests were made in bad faith. (Doc. # 55 at 15); see also Jibory v. City of Jacksonville, 920 So. 2d 666, 667 (Fla. 1st DCA 2006)(holding no sovereign immunity for false arrest claim). Specifically, Warren states that Officer Gassen, acting in his official capacity, acted with "express malice" and "improper, illegal and unconstitutional purposes." (Doc. # 51 at ¶¶ 54, 61); see also Dunn v. City of Boynton Beach, No. 15-81499-CIV-MARRA, 2016 WL 3256935, at *1 n.1 (S.D. Fla. June 14, 2016)("The reference to 'bad faith' in section 768.28(9)(a) is equivalent to actual malice, which depends on subjective intent.")(citation omitted). Under Section 768.28(9)(a), the City cannot be held liable for malicious actions taken in bad faith by Officer Gassen. Fla. Stat. § 768.28(9)(a). Therefore, as pled, the Court agrees that the false arrest claims against the City should be dismissed as barred by sovereign immunity.

Furthermore, even if the claims as pled were not barred by sovereign immunity, the City and Officer Gassen contend the false arrest and false imprisonment claims against them

are subject to dismissal for failure to comply with the pre-
suit notice requirement under Florida law. Section
768.28(6)(a), in pertinent part, states that "[a]n action may
not be instituted on a claim against the state or one of its
agencies or subdivisions unless the claimant presents the
claim in writing to the appropriate agency . . . within 3
years after such claim accrues" Fla. Stat. § 768.28(6)(a). In
the Third Amended Complaint, Warren states that "Florida
Statute [Section] 768 does not apply in Federal Court." (Doc.
# 51 at ¶ 4).

Warren is only partially correct. Section 768 does not
apply to § 1983 claims. Majette v. O'Connor, 811 F.2d 1416,
1418 (11th Cir. 1987). However, Section 768 does apply to
pendent state law claims brought in federal court. See Posen
Constr., Inc. v. Lee Cty., 921 F. Supp. 2d 1350, 1357 (M.D.
Fla. 2013)(applying section 768.28 to supplemental state
claims because "[a] rule that permits in the federal forum
what is clearly barred in the state forum would invariably
lead to forum shopping and, as a result, inequitable results
for similar claims"). Warren fails to allege that he served
pre-suit notice on the City for his state claims. See Doe v.
G-Star Sch. of the Arts, Inc., No. 16-cv-80446-BLOOM/Valle,
2016 WL 4625625, at *4 (S.D. Fla. Sept. 6, 2016)("[A]

27

plaintiff must satisfy the notice requirements prior to maintaining a lawsuit against a subdivision of the State, 'and the complaint must contain an allegation that such notice was given.'")(citation omitted). Accordingly, these claims are due to be dismissed.

### b. False Imprisonment

Additionally, the City and Officer Gassen argue that the false imprisonment claim, Count V, is duplicative of the false arrest claim regarding Warren's arrest in December of 2015. The Court agrees. To be sure, often "false arrest and false imprisonment are different labels for the same cause of action." Smart v. City of Miami, 107 F. Supp. 3d 1271, 1280 (S.D. Fla. 2015)(quoting Weissman v. K-Mart Corp., 396 So. 2d 1164, 1165 n.1 (Fla. 3d DCA 1981)); see also Dunn, 2016 WL 3256935, at *1 n.1 ("In this case, the alleged false arrest and false imprisonment are the same cause of action and the Court refers to the claim as solely a false arrest claim."). While some courts have treated the two claims differently, the Court finds that the false arrest and false imprisonment claim are duplicative here because the arrest and imprisonment of which Warren complains occurred in the same short period of time.

The alleged false arrest and false imprisonment were coterminous — both occurred in the short, approximately one hour period during which Warren was arrested and detained in the back of the police car outside of his live-aboard boat. See, e.g., Weissman, 396 So. 2d at 1166 (treating false arrest and false imprisonment claim as identical where the plaintiff's "entire detention [at the store] did not exceed thirty minutes" for a shoplifting charge); compare Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010)(treating false imprisonment as a broader tort than false arrest where the plaintiff was arrested during a traffic stop in the afternoon, but not released from jail until noon the next day). Therefore, the false imprisonment claim should also be dismissed.

### E.   Malicious Prosecution Claim, Count VI

Finally, the City and Officer Gassen argue that the City is immune from a state law claim for malicious prosecution. The Court agrees: to the extent Warren brings this claim under state law, the City cannot be sued for malicious prosecution. Fla. Stat. § 768.28(9)(a); see Tozier v. City of Temple Terrace, No. 8:10-cv-2750-T-33EAJ, 2011 WL 3961816, at *3 (M.D. Fla. Sept. 8, 2011)(dismissing state law malicious prosecution claim against city); Johnson v. State Dep't of

Health & Rehab. Servs., 695 So. 2d 927, 930 (Fla. 2d DCA 1997)(finding that sovereign immunity provisions of Fla. Stat. § 768.28(9) bar an action for malicious prosecution against the state or its subdivisions).

Although it is unclear whether the malicious prosecution claim is being brought under federal, state, or common law, the Court finds that Warren should not be granted leave to amend this claim as the Court has previously advised Warren of the necessity of specifying under what law each claim is brought.

**IV.  Conclusion**

Despite being represented by counsel, Warren has still failed to state claims upon which relief may be granted after four opportunities. Therefore, the Court dismisses the Third Amended Complaint with prejudice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendants City of Tarpon Springs and Officer Gassen's Motion to Dismiss (Doc. # 55) is **GRANTED**. Gregory's Third Amended Complaint is **DISMISSED WITH PREJUDICE.**

(2)  The Clerk is directed to terminate any pending motions and thereafter **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>8th</u>

day of December, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE